UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


**AMBROSE O. ESOGBUE**                              **CIVIL ACTION**

**VERSUS**                                          **NO. 07-6843**

**DEPARTMENT OF HOMELAND**                          **SECTION "R"(5)**
**SECURITY, ET AL**


                         **REPORT AND RECOMMENDATION**

**I.   BACKGROUND**

        On August 27, 2005, plaintiff, Ambrose Esogbue, a federal immigration detainee, was being housed at the Plaquemines Parish Detention Center ("PPDC").  On that date, based upon the approach of Hurricane Katrina, he was evacuated from PPDC.  Plaintiff was allowed to bring with him "an envelope of legal documents". (Rec. doc. #1, attachment #3, Complaint, p. 2).  The rest of his personal property, which remained at PPDC, was lost when Hurricane Katrina hit the area.  Plaintiff sought compensation for his loss of property as a result of his August 27, 2005 evacuation from PPDC, filing a claim under the Federal Tort Claims Act ("FTCA"). Pursuant to a letter dated April 25, 2006 from Scott A. Whitted,

Associate Legal Advisor for the Department of Homeland Security, Bureau of Immigration and Customs Enforcement, plaintiff was informed that his claim had been denied. (Rec. doc. #1, attachment #3, Complaint, Exhibit A). Thereafter, plaintiff filed a civil action under the FTCA against the Department of Homeland Security and Bureau of Immigration and Customs Enforcement ("ICE") in the United States District Court for the District of Columbia, seeking compensation for his loss of property. See Ambrose O. Esogbue v. Department of Homeland Security, et al, Civil Action No. 06-1895.

In connection with plaintiff's FTCA action, No. 06-1895, defendants, on or about May 7, 2007, filed a motion to dismiss/motion for summary judgment or, alternatively, motion to transfer.[1] On September 6, 2007, the Honorable Rosemary Collyer, United States District Court Judge for the District of Columbia, finding, under the provisions of 28 U.S.C. §1402(b), that the Eastern District of Louisiana was the proper venue for plaintiff's FTCA action, transferred the matter to this court, specifically reserving for this court's review defendants' "dispositive" motion to dismiss/motion for summary judgment. See Esogbue v. Department

---

[1] While defendants did not caption their motion as one seeking summary judgment, defendants, in their supporting memorandum (rec. doc. #1, attachment #9, p. 6), rely on Federal Rule of Civil Procedure 56(c), along with the seminal case of Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986), and refer, in support of their motion, to materials outside the pleadings.

of Homeland Security, 2007 WL 2601932, *1 (D.D.C. Sep. 6, 2007). (Rec. doc. #1, attachment #11, Memorandum Opinion, pp. 2-3).

**II.   MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT**

    **A.   Standard of Review**

        **1) Rule 12(b)(1) Motion to Dismiss**

Defendants seek a dismissal of the instant action pursuant to Federal Rule of Civil Procedure 12(b)(1). (Rec. doc. #1, attachment #9, defendants' supporting memorandum, p. 3). Rule Rule 12(b)(1) requires dismissal if the court lacks jurisdiction over the subject matter of the plaintiff's complaint. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir.1996). In ruling on a Rule 12(b)(1) motion to dismiss, "the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts." Lopez v. City of Dallas, Tex, 2006 WL 1450520, *2 (N.D. Tex. May 24, 2006), citing MCG, Inc. v. Great W. Energy Corp., 896 F.2d 170, 176 (5th Cir.1990).

**2) Rule 12(b)(6) Motion to Dismiss**

Defendants also cite, as a basis for dismissal, Rule 12(b)(6). (Rec. doc. #1, attachment #9, defendants' supporting memorandum, pp. 4-5). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take the factual allegations of the complaint as true and resolve any ambiguities with respect to the sufficiency of the claim in the plaintiff's favor. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir.1996); American Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir. 1991). Plaintiff's complaint should not be dismissed unless it appears beyond a doubt that he can prove no set of facts in support of his claim that would entitle him to relief. McKinley v. Larpenter, 2001 WL 1178348, *2 (E.D. La. Sept. 28, 2001) (citations omitted).

**3. Rule 56 Motion for Summary Judgment**

Summary judgment is warranted when the facts and law, as set forth in the pleadings, affidavits, and other evidence, reflect that no reasonable trier of fact could find for the nonmoving party as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). The moving party bears the initial burden of identifying evidence which reflects the absence of a

genuine issue of material fact, but is not required to negate elements of the nonmoving party's claim. Lynch Props., Inc. v. Potomac Ins. Co., 140 F.3d 622, 625 (5th Cir.1998), citing Celotex, 477 U.S. at 322-25.  Once the moving party carries its initial burden of proof, the burden shifts to the nonmovant to show that summary judgment is inappropriate. Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir.1991).  The nonmovant must go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on conclusory allegations or denials in its pleadings, unsupported by specific facts.  Lopez, 2006 WL at *3, citing Federal Rule of Civil Procedure 56(e).

   **B. Analysis**

      **1. Untimeliness**

Defendants, in their original supporting memorandum (rec. doc. #1, attachment #9, pp. 7-8), argue that plaintiff's FTCA action is untimely, contending that under the provisions of 28 U.S.C. §2401(b), plaintiff had six months from the April 26, 2006 mailing of the denial of his FTCA administrative claim within which to file his FTCA civil action, 06-1895, but waited

until November 7, 2006, to file said action.  However, the "Certificate of Service", attached to plaintiff's Complaint, reflects that he mailed his FTCA civil action on September 25, 2006.  Further, defendants, in their reply to defendant's opposition to their motion to dismiss/motion for summary judgment (rec. doc. #1, attachment #14, footnote 4), acknowledge that they learned, upon inquiry to the Clerk's Office for the United States District Court for the District of Columbia, that plaintiff's FTCA Complaint was, in fact, "timely received".  Accordingly, defendants have "withdraw[n]" their argument that plaintiff's action is untimely.

### 2. Damages Arising from Actions of Independent Contractor

It is undisputed that at the time plaintiff was evacuated from PPDC as a result of the impending hurricane, an "Intergovernmental Service Agreement for Housing Federal Detainees", Agreement Number ACB-I-H-0014 (rec. doc. #1, attachment #10), existed between the federal government and the PPDC, pursuant to which the PPDC agreed to house federal immigration detainees.  Specifically, under Article III.B. of this agreement, the PPDC was charged with the responsibility of providing federal immigration detainees, such as plaintiff, with "safekeeping, housing, subsistence [and] medical" services. (Rec.

doc. #1, attachment #10, Intergovernmental Service Agreement Number ACB-I-H-0014, p. 2).  Further, under Article IV.D. of the agreement, the PPDC was charged with the responsibility, "[i]n the event of an emergency", with evacuating federal detainees in the same manner it employed in evacuating other inmates under its control.  The PPDC was simply required, under the terms of the contract, to notify federal officials "within two hours of such evacuation".  (Rec. doc. #1, attachment #10, Intergovernmental Service Agreement Number ACB-I-H-0014, p. 3).

       This lack of control on the part of federal officials with regard to the evacuation of federal prisoners, in accordance with the above-described contractual provision, is confirmed by the "Declaration of Scott Beemer", the "Detention Operations Supervisor with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), Office of Detention and Removal Operations (DRO)".  Beemer attests that no federal officials, specifically, "no ICE employees", were involved in the August 27, 2005 evacuation of federal prisoners from the PPDC.  Beemer further attests that ICE officials played no role in the decision that evacuating prisoners could not take their personal property with them.  (Rec. doc. #1, attachment #14, defendants' reply memorandum, Government Exhibit 8, enumerated paragraphs 5 and 6).

Plaintiff, in response, offers no evidence to refute the pertinent provisions of the "Intergovernment Service Agreement" between federal officials and the PPDC or even Beemer's "Declaration" to the effect that federal officials did not participate in the August 27, 2005 evacuation. Plaintiff, in his opposition memorandum (rec. doc. #1, attachment #12, p. 5), provides only a hearsay statement to the effect that a PPDC official, "Officer Victor", informed "that they were on orders from ICE to leave the [prisoners'] properties behind."

As the Supreme Court explained in Logue v. United States, 412 U.S. 521, 525-526 (1973), quoting 28 U.S.C. §1346(b) (emphasis added), "[t]he Federal Tort Claims Act ["FTCA"] makes the United States liable for money damages 'caused by the negligent or wrongful act or omission of any **employee** of the Government....'" 28 U.S.C. §2671 defines an "[e]mployee of the government" as including "officers or employees of any federal agency" and "persons acting on behalf of a federal agency in an official capacity." Excluded from liability under the FTCA are damages arising from the acts or omissions of "independent contractors". Broussard v. United States, 989 F.2d 171, 174 (5th Cir. 1993); see also Rodriguez v. Sarabyn, 129 F.3d 760, 765 (5th Cir. 1997); Johnson v. United States, 2006 WL 572312, *3 (E.D. Va. 2006), citing Williams v. United States, 50 F.3d 299, 304

8

(4th Cir. 1995). Thus, the issue to be resolved, for purposes of determining whether liability arises, under the FTCA, for plaintiff's loss of property, is whether the PPDC, in housing plaintiff and other federal detainees and evacuating same on the eve of Hurricane Katrina, was acting "on behalf of a federal agency" or was acting as an "independent contractor". If the former, then liability, under the FTCA, in connection with plaintiff's loss of property, may exist. If the latter, then no such liability exists and the instant action should be dismissed.[2]

The issue of whether liability exists, under the FTCA, in the context of damage sustained by a federal prisoner while in the custody of a local jail is not unprecedented. In Logue, 412 U.S. at 522, a federal prisoner confined in a local jail pending trial made a noose from a bandage covering a laceration on his arm and hanged himself. In analyzing the claim for damages under the FTCA, the Court observed: "[Plaintiffs] appear to contend alternatively that the [local] jail is a 'Federal agency' by reason of its contract for the care of federal prisoners, or that the employees of the jail are 'acting on behalf of' the Bureau of

---

[2]The court notes that plaintiff's sole cause of action in the instant matter is under the FTCA. Plaintiff has not named as defendants the PPDC or any PPDC officials.

Prisons or the Government in performing services for federal prisoners." Id. at 526. The Court, however, rejected plaintiffs' contentions based chiefly upon the lack of control exercised by the federal government over the operations of the local jail where the federal prisoner was housed. The Court reasoned that "the distinction between the servant or agent relationship [pursuant to which liability would arise under the FTCA] and that of independent contractor [pursuant to which FTCA liability would not arise] turn[s] on the absence of authority in the principal [the federal government] to control the physical conduct of the contractor [the local jail] in performance of the contract." Id. at 527. See also Rodriquez, 129 F.3d at 765, quoting Broussard, 989 F.2d at 174 (additional quotations omitted) ("The critical factor in distinguishing an independent contractor from an employee 'is the power of the Federal Government to control the detailed physical performance of the contractor.'").

In Monroe v. U.S. Marshals, 1996 WL 665147, *1 (9th Cir. 1006, cert. denied, 519 U.S. 1138 (1997), plaintiff, "a federal prisoner temporarily housed at the City of Kent correctional center ("jail"), pursuant to a contract between the United States Marshal's Service ("Marshals") and the City of Kent", filed a claim under the FTCA as a result of her

development of "lupus, a progressive kidney disease" during her incarceration at the local jail. The district court granted summary judgment in favor of the United States and the Ninth Circuit affirmed, reasoning:

> In its motion for summary judgment, the United States submitted evidence that established that it had a contract with the City of Kent to provide temporary custody for federal prisoners, and that the Marshals were not responsible for the day-to-day operations of the jail. [Plaintiff's] argument that the Marshals' inspections preclude the jail from contractor status is without merit. See Letnes v. United States, 820 F.2d 1517, 1518-19 (9th Cir. 1987) (noting that inspections and the ability to compel compliance with federal regulations is no longer evidence of an employee relationship). Thus, the district court correctly concluded that the jail is an independent contractor, and that the United States cannot be held liable for the negligence of jail employees pursuant to the FTCA. See Logue, 412 U.S. at 528; see also Laurence v. Department of Navy, 59 F.3d 112, 114 (9th Cir. 1995); Letnes, 820 F.2d at 1518-19.

Id.

Finally, in a more recent decision, Johnson v. United States, 2006 WL 572312, *1 (E.D. Va. Mar. 7, 2006), a federal prisoner being held in the Virginia Peninsula Regional Jail ("VPRJ") died and a claim was filed, under the FTCA, as a result of the allegedly inadequate medical treatment the federal prisoner received during his incarceration in the VPRJ. The Johnson court determined that no liability arose under the FTCA, in part, because the jail was an independent contractor, as

opposed to a federal agency.  The court reasoned:

> Here, the [United States Marshal Service] contracted with the VPRJ for the "housing, safekeeping, and subsistence of federal prisoners" (Mot. to Dismiss, Ex.2).  The intergovernmental contract required the VPRJ to provide general medical care to the federal prisoners in its custody as well as to provide trained jail staff for around the clock supervision including "24-hour emergency medical care for prisoners" ( Id. at Art. XIII).  Although the [United States Marshal Service] retained the right to perform "periodic inspections" of the VPRJ facility, such inspections do not "nullify the general rule" that the United States is not responsible for the actions of an independent contractor.  Thus, it is clear from the contract and from the undisputed facts that the [United States Marshal Service] did not assume control over "day-to-day operations" of the VPRJ.  Therefore, based on the holding in Logue and the facts discussed above, the court concludes that VPRJ was an "independent contractor" and not an employee or agent of the United States as defined in the FTCA.

Id. at *4.

In the instant situation, as in Johnson, supra, the contract between the local jail, the PPDC, and the federal government, provided that the local jail (PPDC) provide for the "safekeeping, housing, subsistence [and] medical" services of federal prisoners.  (Rec. doc. #1, attachment #10, Service Agreement Number ACB-1-H-0014, p. 2).  Further, as was the case in Johnson, supra, it is clear, from the pertinent contract and the undisputed facts, that federal authorities, in the instant matter, did not have control over the "day-to-day operations" at

PPDC.  With regard to the specific activity at issue, namely, the August 27, 2005 evacuation of prisoners from PPDC, the intergovernmental contract specifically provided that federal officials would have no control over said activity, specifying that the "Service Provider", i.e., the PPDC, would perform the evacuation in the same manner as it evacuated other prisoners housed in its facility and would simply inform federal authorities within two hours of said evacuation.  (Rec. doc. #1, attachment #10, Service Agreement Number ACB-1-H-0014, p. 3). Accordingly, it is clear that with respect to the August 27, 2005 evacuation of federal prisoners, the PPDC was acting as an independent contractor, rather than as an agent for the federal government.  As such, there is no liability under the FTCA arising from said evacuation and the attendant decision that evacuated prisoners' personal belongings would be left behind.[3]

## RECOMMENDATION

It is therefore recommended that the defendants' motion

---

[3] Based upon the court's determination that defendants are entitled to summary judgment based upon the PPDC's status as an independent contractor, there is no need for the court to address defendants' alternative basis for dismissal, namely, that "the United States is protected from liability for damages caused by natural events, such as 'floods and flood waters." (Rec. doc. #1, attachment #9, defendants' supporting memorandum at pp. 12-13).

for summary judgment be granted and the instant action be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this __11th__ day of ____February____, 2007.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE